[Cite as *Allen v. Dept. of Adm. Servs. Office of Risk Mgt.*, 2020-Ohio-1138.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Paul Allen, | : | |
| Plaintiff-Appellant, | : | |
| v. | : | No. 19AP-729 |
| | | (Ct. of Cl. No. 2018-01496JD) |
| Department of Administrative Services Office of Risk Management, et al., | : | (REGULAR CALENDAR) |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on March 26, 2020

**On brief:** *Swope and Swope*, and *Richard F. Swope*, for appellant. **Argued:** *Richard F. Swope.*

**On brief:** *Dave Yost*, Attorney General, and *Eric A. Walker*, for appellees. **Argued:** *Eric A. Walker.*

APPEAL from the Court of Claims of Ohio

SADLER, P.J.

{¶ 1} Plaintiff-appellant, Paul Allen, appeals from the judgment of the Court of Claims of Ohio granting summary judgment in favor of defendants-appellees, Department of Administrative Services Office of Risk Management and Ohio Department of Rehabilitation and Correction ("DRC"). For the following reasons, we affirm the judgment of the trial court.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} The events giving rise to the complaint occurred on December 15, 2016, when appellant was an inmate at the Allen Oakwood Correctional Institution in Lima, Ohio. On the morning of December 15, 2016, appellant was to be transported to Franklin Medical

Center for chemotherapy treatment in a Dodge minivan. The van was modified consistent with DRC policy to include a steel screen that separated the driver and front passenger from the inmates. Also consistent with DRC policy, all seatbelts from the inmate seating area were removed from the transport vehicle. Appellant was seated in one of the two bucket seats facing the steel screen. As a Type A inmate, appellant was fully restrained with leg irons, a belly chain, and handcuffs. DRC employees Steve Humes and Kristopher Durr were assigned to transport appellant to Franklin Medical Center.

{¶ 3} On the date in question, Humes proceeded to drive the van toward Columbus in route to Franklin Medical Center. During the transport, the van was cut off by another vehicle forcing Humes to abruptly break to avoid a collision. While no accident occurred, the sudden stop caused appellant to be thrown forward striking the metal screen. Appellant lost consciousness and suffered a laceration to his eyebrow. Appellant was treated for his injuries at Franklin Medical Center.

{¶ 4} On December 10, 2018, appellant filed a complaint seeking judgment against the DRC and Department of Administrative Services Office of Risk Management for negligence. In the complaint, appellant alleged common law negligence against appellees under two distinct theories. First, appellant argued appellees were negligent in removing seatbelts from the inmate seating area of the van. Second, appellant argued that Humes was negligent in his operation of the transport van causing a collision with another vehicle. Appellees answered and asserted, among other defenses, that they were entitled to immunity.

{¶ 5} On August 2, 2019, appellees filed a motion for summary judgment arguing (1) discretionary immunity protects appellees from liability for its policy to prohibit the use of seatbelts in transport vehicles for Type A inmates, and (2) there is no genuine dispute of material fact that the transport officer was not negligent in his operation of the vehicle. In support of summary judgment, appellees pointed to the deposition testimony of Humes and appellant, as well as the affidavit of Timothy McConahay, security administrator for DRC.

{¶ 6} In his affidavit, McConahay stated he is responsible for setting the state policy regarding how inmates are transported in prison vehicles. McConahay noted DRC policy requires "factory-installed seatbelts or any other form of restraint shall be removed from

the inmate seating area of the transportation vehicle prior to the transport of any Type A inmate." (McConahay Aff. at ¶ 3, attached to Mot. for Summ. Jgmt.) McConahay provided a number of policy justifications for the removal of seatbelts including:

> b. The inmates being transported off prison grounds are restrained by leg irons, belly chains, and handcuffs. This makes it difficult for a seatbelt to be worn properly, as the seatbelt would place pressure on arms that are already re[s]trained; this could cause medical problems for the inmate.
>
> * * *
>
> d. All transportation corrections officers are required to be armed with a handgun when they transport a Type A inmate outside of the prison grounds. If an inmate were restrained by a seatbelt, for instance, one of the two corrections officers would have the responsibility of fastening or unfastening the seatbelt of the inmate. This situation would be unsafe and dangerous for the corrections officer to perform because it would cause the corrections officer to be physically close to the inmate to fasten and unfasten the seatbelt, which could give the inmate an opportunity to reach for the corrections officer's weapon.
>
> e. Seatbelts can be used as a device to choke or harm other inmates in the transportation vehicle, inflict self-harm, or to assist in opening cuffs when they are not double locked.

(McConahay Aff. at ¶ 5(b), (d), (e).)

{¶ 7} On August 12, 2019, appellant filed a memorandum contra to appellees' motion for summary judgment. Appellant argued summary judgment was improper because appellees have failed to state how allowing a fully restrained inmate to wear a seatbelt affects security warranting discretionary immunity. Appellant primarily relies on this court's ruling in *Woods v. Ohio Dept. of Rehab. & Corr.*, 130 Ohio App.3d 742 (10th Dist.1998), which held the trial court committed reversible error when DRC was negligent in transporting an inmate.

{¶ 8} While appellant did not directly address his negligent driving claim in his memorandum, appellant's affidavit appears to assert that a dispute of fact remains whether the transport officer was negligent in his operation of the vehicle. In his affidavit, appellant stated that while Humes "proceeded toward Columbus, [d]istracted while talking on his phone another vehicle struck us hard enough to cause me to be thrown forward, striking

the metal screen, rendering me unconscious, which would not have occurred had there been seat belts." (Allen Aff. at ¶ 9, filed Aug. 12, 2019.)

{¶ 9} In their reply in support of summary judgment, appellees contended *Woods* was not applicable to the present case because the *Woods* court never addressed the doctrine of discretionary immunity. As immunity is an affirmative defense, appellees argue the issue was waived. Appellees also argued appellant's affidavit directly contradicts his deposition testimony and should be disregarded. Appellees stated that at appellant's deposition, appellant conceded that he did not "know if we were hit, cut off. I just know I was rendered unconscious." (Allen Dep. at 32.) Appellant also conceded he did not know if Humes was on his cellphone at the time of the incident:

> Q: Okay. But it sounds like you are saying you don't know for sure whether he was using the phone at the time that he slammed on his brakes?
>
> A: Yeah, I don't know whether he—whether—you know, because it was just a regular thing. And I really don't want— being honest, and I'm—you know, this is under oath.

(Allen Dep. at 39-40.)

{¶ 10} On September 24, 2019, the Court of Claims granted appellees' motion for summary judgment and entered judgment in their favor. In doing so, the trial court found appellees were entitled to discretionary immunity because the removal of the "seatbelts from inmate transport vehicles is a basic policy decision characterized by the exercise of a high degree of official judgment or discretion." (Sept. 24, 2019 Jgmt. Entry at 5.) The trial court noted that because discretionary immunity was never raised as an affirmative defense in *Woods*, it is inapplicable to the present case.

{¶ 11} Regarding appellant's second theory of negligence, the trial court determined that "there is no genuine issue of material fact that a collision did not occur and that Mr. Humes was not negligent in his operation of the van." (Jgmt. Entry at 5.) The trial court also found that while appellant's affidavit stated Humes was on his cellphone and that the van was struck by another vehicle, appellant's previous deposition testimony directly contradicted these assertions. Nevertheless, the trial court found that even if appellant's affidavit was considered, "plaintiff's affidavit testimony buttresses the finding that there is no genuine issue of material fact regarding Mr. Humes' lack of negligence as it indicates that another vehicle struck the van." (Jgmt. Entry at 5.)

{¶ 12} Appellant filed a timely appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 13} Appellant assigns the following as trial court error:

> [1.] THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE'S [sic] MOTION FOR SUMMARY JUDGMENT.
>
> [2.] THE GRANTING OF THE MOTION FOR SUMMARY JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.

## III. STANDARD OF REVIEW

{¶ 14} Appellate review of summary judgment is de novo. *Gabriel v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 14AP-870, 2015-Ohio-2661, ¶ 12, citing *Byrd v. Arbors E. Subacute & Rehab. Ctr.*, 10th Dist. No. 14AP-232, 2014-Ohio-3935, ¶ 5. "When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination." *Gabriel* at ¶ 12, citing *Byrd* at ¶ 5, citing *Maust v. Bank One Columbus, N.A.*, 83 Ohio App.3d 103, 107 (10th Dist.1992).

{¶ 15} Pursuant to Civ.R. 56(C), summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978). "When seeking summary judgment on grounds that the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims." *Lundeen v. Graff*, 10th Dist. No. 15AP-32, 2015-Ohio-4462, ¶ 11, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once the moving party meets its initial burden, the nonmovant must set forth specific facts demonstrating a genuine issue for trial. *Dresher* at 293.

## IV.  LEGAL ANALYSIS

### A.  Appellant's First Assignment of Error

{¶ 16} In his first assignment of error, appellant argues the trial court erred by granting summary judgment in favor of appellees.  For the following reasons, we disagree.

{¶ 17} In his complaint, appellant has alleged two separate theories of negligence against appellees.  Under appellant's first theory of negligence, appellant argues the trial court erred by finding appellees were entitled to discretionary immunity for removing seatbelts from the inmate seating area of the transport van.  Appellant contends appellees "cannot articulate how allowing a fully restrained inmate to wear seatbelts and shoulder harnesses affects security or maintains order."  (Appellant's Brief at 10.)

{¶ 18} DRC is generally given immunity from tort liability arising out of decisions derived from its policy and procedures.  *Hughes v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-1052, 2010-Ohio-4736, ¶ 16.   This immunity, referred to as discretionary immunity, provides that "the state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision that is characterized by the exercise of a high degree of official judgment or discretion."  *Risner v. Ohio Dept. of Transp.*, 145 Ohio St.3d 55, 2015-Ohio-4443, ¶ 12.  "ODRC is generally immune from tort liability for decisions related to policies and procedures."  *Scott v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 12AP-755, 2013-Ohio-4383, ¶ 24.  Penal institutions are "accorded deference in adopting and executing policies and procedures to maintain order."  *Hughes* at ¶ 17, citing *Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979).

{¶ 19} In his affidavit, McConahay explained the policy rationale for removing seatbelts from the inmate seating area.  McConahay stated transports are one of the highest risks in corrections for attempted escape as the inmate is outside the prisoner facility.  (McConahay Aff. at ¶ 5(a).)  The use of a seatbelt also potentially exposes the officers to unnecessary risk when reaching over the inmate to fasten and unfasten the seatbelt when an inmate could attempt to grab their firearm.  Given these facts, DRC's removal of seatbelts from the inmate seating area of the transport van constitutes a prison security policy that affords DRC a high degree of discretion.

{¶ 20} Appellant relies heavily on *Woods* in support of his contention that appellees were negligent in removing seatbelts from the inmate seating area of the van. In *Woods*, the appellant was injured while traveling to a hospital in a prison transport van while fully restrained with leg irons, a belly chain, and handcuffs. *Id.*, 130 Ohio App.3d at 744. The appellant in *Woods* filed a complaint for negligence, and the trial court rendered judgment for DRC finding the appellee was not negligent in failing to equip the van with restraining devises. *Id.* Appellant appealed, and we reversed and remanded the case finding DRC owed a duty of care to appellant when transporting inmates on public thoroughfares. *Id.* at 745.

{¶ 21} While the facts are strikingly similar, unlike the *Woods* case, appellant herein asserted discretionary immunity as an affirmative defense. Pursuant to Civ.R. 8(C), a defendant must set forth its affirmative defenses in his answer. Failure to raise an affirmative defense in a timely manner results in a waiver of the defense. *Jim's Steak House v. Cleveland*, 81 Ohio St.3d 18, 20 (1998). Under Ohio law, immunity is an affirmative defense. *Turner v. Cent. Local School Dist.*, 85 Ohio St.3d 95, 97 (1999). Because the instant case concerns discretionary immunity, we agree with the trial court that *Woods* is inapplicable to the analysis in this case.

{¶ 22} Here, appellees asserted immunity as an affirmative defense in their answer and properly raised the defense in their motion for summary judgment. After considering all the evidence, we agree with the Court of Claims that appellees were entitled to discretionary immunity from liability concerning the removal of seatbelts in transport vans. Therefore, appellant's first theory of negligence is overruled.

{¶ 23} Under his second theory of negligence, appellant claims Humes negligently operated the transport van by talking on his cellphone resulting in an accident with another vehicle.

{¶ 24} "It is fundamental that in order to establish a cause of action for negligence, the plaintiff must show (1) the existence of a duty, (2) a breach of duty, and (3) an injury proximately resulting therefrom." *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 8, citing *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77 (1984). The plaintiff has the burden to meet each element of the negligence claim by a preponderance of evidence. *Skorvanek v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 17AP-222, 2018-Ohio-3870, ¶ 27, citing *Forester v. Ohio Dept. of Rehab & Corr.*, 10th Dist.

No. 11AP-366, 2011-Ohio-6296, ¶ 7. "In the context of a custodial relationship between the state and its inmates, the state owes a common-law duty of reasonable care and protection from unreasonable risks of physical harm." *McElfresh v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 04AP-177, 2004-Ohio-5545, ¶ 16.

{¶ 25} As an initial matter, appellant's affidavit fails to satisfy the standards set by the court in *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, when considering a contradictory affidavit with a memorandum in opposition to a motion for summary judgment. The *Byrd* court stated that an affidavit by a party opposing summary judgment that purports to create a genuine issue of material fact that contradicts former deposition testimony may not, without proper explanation, create a genuine issue of material fact to overcome a motion for summary judgment. "[W]hen an affidavit is inconsistent with affiant's prior deposition testimony as to material facts and the affidavit neither suggests affiant was confused at the deposition nor offers a reason for the contradictions in her prior testimony, the affidavit does not create a genuine issue of fact which would preclude summary judgment." (Citation omitted.) *Id.* at ¶ 28. *Dubenion v. DDR Corp.*, 10th Dist. No. 15AP-915, 2016-Ohio-8128, ¶ 13, quoting *Byrd*, 2006-Ohio-3455, at ¶ 28.

{¶ 26} In his deposition testimony, appellant initially stated he did not know whether the van was hit by another vehicle or if Humes was using a cellphone at the time of the incident. However, in his affidavit, appellant stated while Humes was "[d]istracted while talking on his phone another vehicle struck us hard enough to cause me to be thrown forward, striking the metal screen, rendering me unconscious." (Allen Aff. at ¶ 9.) Appellant has provided no justification or explanation for these contradictions to his prior testimony. As such, we agree with the Court of Claims and find this court must disregard the affidavit testimony.

{¶ 27} Here, excluding the affidavit of appellant, there is no evidence the transport officer was negligent in his operation of the van. First, there is no evidence in the record an accident even occurred. During his deposition, Humes testified that while transporting appellant to Franklin Medical Center the van was cut off by another vehicle. Humes stated he was forced to abruptly break to avoid a collision. Appellant testified at his deposition he did not know what happened and did not see the incident. Second, there is no evidence Humes was on his cellphone during the transport. Humes unequivocally stated he was not

using a cellphone when he hit the breaks to avoid the other vehicle. Again, appellant testified at his deposition that he did not know if the officer was on his cellphone during the incident.

{¶ 28} Based on our review of the facts and applicable law, the evidence is uncontroverted that a collision did not occur. There is also no evidence Humes was negligent in his operation of the transport van. For the foregoing reasons, appellant's first assignment of error is overruled.

### B. Appellant's Second Assignment of Error

{¶ 29} In his second assignment of error, appellant argues the trial court granting appellees' motion for summary judgment was against the manifest weight of the evidence. Weight of evidence concerns " 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.' " (Citations omitted.) *Mid. Am. Constr. v. Univ. of Akron*, 10th Dist. No. 18AP-846, 2019-Ohio-3863, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 21. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus.

{¶ 30} When reviewing a motion for summary judgment, appellate courts review the matter de novo. Civ.R. 56; *Grenga v. Youngstown State Univ.*, 10th Dist. No. 11AP-165, 2011-Ohio-5621, ¶ 29. A review of a motion for summary judgment under the manifest-weight standard " 'is a non sequitur because, on summary judgment, a court may not weigh the evidence.' " *Id.*, quoting *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 9 (10th Dist.). Accordingly, because this court must review a motion for summary judgment on appeal de novo, appellant's second assignment of error seeking reversal of summary judgment based on the manifest weight of the evidence is not well taken. *White* at ¶ 9.

{¶ 31} Accordingly, appellant's second assignment of error is overruled.

## V. CONCLUSION

{¶ 32} Having overruled appellant's two assignments of error, we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

DORRIAN and LUPER SCHUSTER, JJ., concur.

_____